[No. 15203-7-II. Division Two. June 28, 1994.]

DALE E. LEAVITT, ET AL, *Respondents,* v. JEFFERSON COUNTY, ET AL, *Appellants.*

670

*Mark L. Huth, Prosecuting Attorney for Jefferson County,* for appellants.

*Erwin P. Jones, Jr.,* for respondents.

SEINFELD, J. — The Clallam County Superior Court vacated and declared void the Jefferson County Development Code (Code), concluding that in enacting the Code, Jefferson County (County) violated the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, and the Planning Enabling Act, RCW 36.70. Jefferson County appeals; we reverse.

The Jefferson County Board of County Commissioners (Board) adopted the Code on October 16, 1989. The Code is a countywide zoning or land use regulation that serves as an "official control", RCW 36.70.550, and implements the Jefferson County Comprehensive Plan.

In 1982 the Jefferson County Planning Commission (Commission), a citizen body that assists the Jefferson County Planning Department (Department), began drafting a development code. The Commission worked at this task over a 6-year period, incorporating comments it obtained from the public at numerous public meetings and hearings. Finally, on September 28, 1988, the Commission referred the draft code to the Board for its review and consideration, without recommending its adoption. *See* RCW 36.70.600-.610.

Upon receipt of the draft, the Board proceeded as if it were initiating consideration of an official control ordinance under RCW 36.70.640. First, it referred the draft back to the Commission for a report. When the Commission completed its report, the Board and Commission held a joint public workshop in January 1989. The Board then compiled a list of proposed changes to the draft code and scheduled four public hearings throughout the county. The published

notices for the hearings included a summary of the draft code.

The Board conducted the public hearings in June 1989, and accepted written comments until the end of June. The Board and the Department then further revised the draft code in light of the public comments. At its public meeting on September 19, 1989, the Board discussed the draft and made still further revisions.

Meanwhile, the Director of the Department prepared an environmental checklist assessing the proposed code's environmental impacts. At the Board's September 25, 1989, meeting, the Director reviewed the checklist and advised the Board that the Code, by implementing the County's comprehensive plan, would significantly affect land use throughout Jefferson County, including environmentally sensitive areas. The checklist itself indicates the Code would *beneficially* impact the environment, including environmentally sensitive areas. Nothing in the checklist or in the Director's review suggested the Code would negatively impact the environment. The Board issued a determination of nonsignificance (DNS) for the draft, ending SEPA review of the proposed Code.

When the Department and the Board completed the revisions, the Board published the entire proposed ordinance as an insert in the October 4, 1989, county newspaper. A development code map, published along with the draft code, contained a notation that the map was not "parcel specific".

At its October 1989 public meeting, a member of the Board proposed four additional revisions to the draft code as published in the newspaper insert. According to the minutes of the meeting:

> Commissioner Dennison stated . . .. There are a couple of sections in the Code that have been misunderstood. The wording of the section may not reflect the intent of the section. Commissioner Dennison then proposed four amendments to the code for clarification . . ..

The Board then voted to adopt the Code with the four additional amendments. Later in the meeting, the Jefferson

County Prosecuting Attorney gave his opinion that "the Board was proper in amending the language of the Development Code Ordinance before adoption since there was no substantive change[ ] in the Ordinance."

Dale Leavitt[1] filed a petition for a statutory writ of certiorari, RCW 7.16.040, on November 1, 1989, seeking review of the Board's adoption of the Code. Leavitt alleged denial of due process and violations of the Planning Enabling Act, the public disclosure act, SEPA, and the open public meetings act. The Clallam County Superior Court issued the writ, and in August 1991 vacated the Board's action, and declared the Code null and void. Jefferson County appeals.

## WRIT OF CERTIORARI

On appeal, the County argues that the Superior Court lacked authority to review the Board's legislative act of adopting the Code pursuant to a statutory writ of certiorari. Leavitt responds, citing RAP 2.5(a), that we should not consider this issue because the County failed to raise it below and, furthermore, conceded before the trial court that review by statutory certiorari was appropriate.

It appears that the County did not dispute the propriety of the writ below because, at the time, the case of *Byers v. Board of Clallam Cy. Comm'rs*, 84 Wn.2d 796, 797, 529 P.2d 823 (1974) seemed to control. However, while this appeal was pending the Supreme Court decided *Raynes v. Leavenworth*, 118 Wn.2d 237, 243-45, 821 P.2d 1204 (1992). As we discuss below, *Raynes* clarifies the appropriate use of the statutory writ of certiorari and limits the applicability of *Byers*.

Although RAP 2.5(a) authorizes the appellate court to refuse to review any claim of error not raised in the trial court, an exception explicitly allows a party to raise the issue of lack of trial court jurisdiction for the first time on appeal. RAP 2.5(a)(1). That is exactly the claim that the County makes here; that the trial court exceeded its jurisdiction when it

---

[1] The named Plaintiffs are Dale and William Leavitt and Stan and Candis Johnston. Except where otherwise noted, we will refer to the Plaintiffs collectively as Leavitt.

reviewed a legislative act by means of a statutory writ of certiorari. *See Okanogan Cy. Sch. Dist. 400 v. Andrews*, 58 Wn.2d 371, 376, 363 P.2d 129 (1961); *Bridle Trails Comm'ty Club v. Bellevue*, 45 Wn. App. 248, 252, 724 P.2d 1110 (1986). Thus, RAP 2.5(a) does not preclude our review of the propriety of certiorari; rather it mandates review.

In *Raynes*, the Supreme Court clarified the criteria for issuing a statutory writ in the context of a zoning case. Applying the *Raynes* test, we find merit in Jefferson County's jurisdictional argument.

RCW 7.16.040 states a court may grant a statutory writ of certiorari

> when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

Generally, the statutory writ is available only to review actions judicial in nature. *Raynes*, 118 Wn.2d at 243-44. However, some authority suggests that a court may review a zoning matter legislative in nature. *See Byers*, 84 Wn.2d at 797, 800, 802.

Plaintiffs in *Raynes* sought a writ of review to challenge an amendment to a city zoning code. 118 Wn.2d at 240-42. The trial court denied the writ on the basis that the city council's actions were legislative, not judicial. 118 Wn.2d at 242. The Supreme Court affirmed, stating, "The trial court was correct, then, when it determined that since the action was legislative, no writ should issue." 118 Wn.2d at 245.

■ The *Raynes* court first notes that courts must afford great deference to legislative actions to prevent substitution of judicial judgment for the decisions of elected officials and to preserve the separation of powers. 118 Wn.2d at 243. It then restates the 4-part test courts use to determine whether a particular decision is quasi judicial or legislative. Although this is not a rigid or conclusive test, *see* 118 Wn.2d at 243, 244,

in general an administrative decision sufficiently resembles a judicial action to allow issuance of a writ if

> (1) . . . the court could have been charged with the duty at issue in the first instance; (2) . . . the courts have historically performed such duties; (3) . . . the action of the municipal corporation involves application of existing law to past or present facts for the purpose of declaring or enforcing liability rather than a response to changing conditions through the enactment of a new general law of prospective application; and (4) . . . the action more clearly resembles the ordinary business of courts, as opposed to those of legislators or administrators.

118 Wn.2d at 244-45 (quoting *Standow v. Spokane*, 88 Wn.2d 624, 631, 564 P.2d 1145, *appeal dismissed*, 434 U.S. 992 (1977)); *see also* RCW 7.16.120 (scope of review allowed under a writ).

The Board's action here could scarcely be more legislative. The Board enacted a countywide development code of general and prospective application; Jefferson County previously had no development code. A court could not initially have enacted the Code, nor have courts historically performed such functions. The Board was making public policy based in part on public hearings and comments, not applying existing law; this is not the ordinary business of courts but of legislatures. The *Raynes* court found a zoning amendment affecting only 38 of 616 acres and allowing a use sought by specific persons to be legislative, 118 Wn.2d at 239-42, 245; Jefferson County's adoption of its countywide Code is even more distinctly dissimilar from proceedings historically performed by courts and from actions resembling the ordinary business of courts.

Nonetheless, Leavitt, relying on *Byers*, argues that there is an exception to the legislative/judicial dichotomy for review of zoning ordinances. The *Byers* court, citing *Pierce v. King Cy.*, 62 Wn.2d 324, 382 P.2d 628 (1963), did allow review of "the *initial interim zoning* of a substantial segment of [Clallam] county" by statutory writ of certiorari. *Byers*, 84 Wn.2d at 803.

The *Raynes* court did not explicitly overrule *Byers*. Rather, it cited *Byers* for the proposition that statutory certiorari "has been held the proper method" to test a zoning ordinance. 118 Wn.2d at 244. Clearly, however, the use of the statutory writ in *Byers* is fundamentally incompatible with the reasoning in *Raynes*. The *Raynes* court emphasized that there is no essential judicial attribute or rigid test to determine whether decisions are more judicial or more legislative. 118 Wn.2d at 243, 244. Instead, *Raynes* requires a case-by-case application of RCW 7.16.040 and of the four judicial/legislative factors.

Further, we note that *Pierce v. King Cy., supra*, the authority upon which *Byers* relies, is distinguishable. The specific controversy in *Pierce* centers on the permissible use of two particular lots. 62 Wn.2d at 327-28. The petitioners in *Pierce* complained that the County, in adopting a zoning resolution that changed the use of those two lots from residential to commercial, had engaged in arbitrary and capricious spot zoning. 62 Wn.2d at 338-40. The contest in *Pierce*, albeit a challenge to the amendment of a zoning code, focuses on a dispute between particular affected property owners and the County regarding the County's arbitrary and capricious zoning of two lots. The County, in adopting the challenged resolution, arguably applied zoning law to particular parcels, and in doing so acted in a way that more closely resembled the ordinary business of the courts than is the case at issue here.

Further, we cannot determine whether the discussion in *Pierce* related to the statutory writ under RCW 7.16.040 or the right of constitutional certiorari guaranteed under article 4, sections 1 and 6 of the Washington Constitution (also called a "common law" writ of review).[2] 62 Wn.2d at 329-31; *see Department of Agriculture v. State Personnel Bd.*, 65 Wn. App. 508, 513-15, 828 P.2d 1145, *review denied*, 120 Wn.2d 1003 (1992). To the extent it dealt with the common law writ, the analysis is not applicable.

---

[2]Const. art. 4, § 6 provides, in relevant part: "Said courts and their judges shall have power to issue writs of . . . certiorari . . .".

■ We conclude that the Board's adoption of a county-wide zoning code was legislative and, thus, not subject to review by a statutory writ of certiorari. Nonetheless, considering the fact that *Raynes* antedated the trial court's hearing in this case, and, further, that the County did not challenge the use of the statutory writ at the time of the hearing, we conclude it is appropriate to treat Leavitt's application for a statutory writ as an application for a constitutional or common law writ.

## RECORD ON REVIEW

■ On appeal from a superior court decision in a writ of review case, this court reviews de novo the record of the lower tribunal or agency, not the superior court judgment. *Lejeune v. Clallam Cy.*, 64 Wn. App. 257, 263, 823 P.2d 1144, *review denied*, 119 Wn.2d 1005 (1992); *see Pierce Cy. Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 695-97, 658 P.2d 648 (1983); *Department of Agriculture*, 65 Wn. App. at 515-16. Further, a superior court acting pursuant to a constitutional writ performs an appellate, not a fact-finding role; it does not substitute its judgment for the agency and is usually bound by the agency's determination of the facts. *State ex rel. Cosmopolis Consol. Sch. Dist. 99 v. Bruno*, 59 Wn.2d 366, 370, 367 P.2d 995 (1962). Thus, here we review de novo the Board's record. Any findings of fact entered by the superior court are surplusage. *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618-19, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992).

Before this court, Leavitt largely defends the superior court decision and does not reassert her earlier claims. We review only Leavitt's claims that the Superior Court found to have merit and that Leavitt again argues in her appellate brief.[3] Those claims are as follows: the Board erroneously issued a determination of nonsignificance; the Board failed

---

[3]Procedurally, Leavitt is before us as the Respondent, not the Appellant. However, we are performing the same task as did the Superior Court, reviewing the record of the Board. The Superior Court's reversal of the Board does not change the nature of our review, and, as the aggrieved party, "Respondent" Leavitt must demonstrate to this court that the Board erred. For an explanation of Leavitt's "role reversal", *see Deaconess Med. Ctr. v. Department of Rev.*, 58 Wn. App. 783, 791 n.4, 795 P.2d 146 (1990) (Petrich, J., dissenting in part).

to comply with statutes related to public notice and public hearings; and the Board failed to comply with substantive provisions of the Planning Enabling Act regarding the adoption of official maps.

## STANDARD OF REVIEW

■ Courts, under their common law writ authority, generally have inherent and discretionary power to review challenges to an administrative decision. *Bridle Trails*, 45 Wn. App. at 251-52. We review the administrative body's legislative decision for illegal acts or arbitrary and capricious conduct, *i.e.*, an unreasoning decision made without consideration and in disregard of the facts. *Pierce Cy. Sheriff*, 98 Wn.2d at 694-95; *Cosmopolis*, 59 Wn.2d at 369-70.

However, the constitution does not empower the trial court to engage in full appellate review. *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 221, 643 P.2d 426 (1982); *Bridle Trails*, 45 Wn. App. at 251-52. Review pursuant to constitutional certiorari is "very narrow", *Pierce Cy. Sheriff*, 98 Wn.2d at 695; the superior court may only determine, based on its review of the record below, whether the agency violated the petitioner's fundamental rights by acting in a way that is either illegal or "manifestly arbitrary and capricious". *Pierce Cy. Sheriff*, at 693. When acting pursuant to our inherent review authority, we consider only whether the agency's conclusions, as a matter of law, are arbitrary, capricious, or illegal. *Williams*, 97 Wn.2d at 221.

### SEPA STANDING

Initially, Jefferson County argues that Leavitt and the other Plaintiffs lacked standing to challenge the Board's determination of nonsignificance. Notwithstanding Leavitt's claim to the contrary, the record shows that Jefferson County consistently made this argument below.

■ A party wishing to challenge a SEPA determination must meet a 2-part test to establish standing. *Trepanier v. Everett*, 64 Wn. App. 380, 382-83, 824 P.2d 524, *review denied*, 119 Wn.2d 1012 (1992). First, the plaintiff's supposedly

endangered interest must be arguably within the zone of interests protected by SEPA. 64 Wn. App. at 382. Second, the plaintiff must allege an injury in fact; that is, the plaintiff must present sufficient evidentiary facts to show that the challenged SEPA determination will cause him or her specific and perceptible harm. 64 Wn. App. at 382-83. The plaintiff who alleges a threatened injury rather than an existing injury must also show that the injury will be "immediate, concrete, and specific"; a conjectural or hypothetical injury will not confer standing. 64 Wn. App. at 383.

Plaintiffs concede that Stan Johnston's affidavit is insufficient to confer standing. However, Dale Leavitt states in her affidavit that she owns property in Jefferson County adjacent to and downhill from approximately 500 acres of undeveloped land. According to Leavitt, the "Code contemplates a concentration of residences in the 500 acres" adjacent to her property. She contends that the Code would allow residential densities of up to five dwelling units per acre on those 500 acres. Thus, she considers the environmental impact of the Code based on 2,500 residences draining polluted water onto her property. She also considers the traffic impact based on 2,500 potential residences.

Leavitt's alleged impacts are speculative and undocumented; they are possible, not necessary, impacts of the Board's adoption of the Code. However, the claimed impacts are within the interests protected by SEPA and Leavitt alleges that they directly impact her property and interests. We will assume Leavitt has established standing for purposes of review.

## DETERMINATION OF NONSIGNIFICANCE

Leavitt argues the Board clearly erred when it issued a DNS. Under SEPA, a municipality must prepare an environmental impact statement (EIS) before taking any major action (including adopting proposed legislation) with a probable significant *and adverse* environmental impact. RCW 43.21C.030(2)(c), .031.

When considering a proposal, an agency or municipality must make a threshold determination of environmental significance or nonsignificance, usually based on an environmental checklist prepared by the applicant. RCW 43.21C.033; WAC 197-11-100, -310, -315, -330. If it issues a determination of significance, the municipality must prepare an EIS. WAC 197-11-300(2), -360. A threshold determination of no probable significant adverse impacts is final and binding on all agencies. WAC 197-11-340, -390. Agency SEPA determinations are accorded substantial weight. RCW 43.21C.090.

■ The clearly erroneous standard applies to a review of a DNS. An agency determination is clearly erroneous only if, after a review of the entire record and in light of the policy of SEPA, the reviewing court is left with the definite and firm conviction that the agency made a mistake. *Norway Hill Preserv. & Protec. Ass'n v. King Cy. Coun.*, 87 Wn.2d 267, 275, 552 P.2d 674 (1976).

In this case, the Director of the Planning Department prepared an environmental checklist, which he reviewed with the Board. As we noted above, the checklist indicated that adopting the Code would beneficially impact the environment. The Board issued a DNS.

The Superior Court held the Board's determination clearly erroneous, relying on the Director's statement that the Code would significantly affect Jefferson County land use. We disagree. The evidence in the record suggests that the environmental impact would be *beneficial*, not adverse. The Board's determination of nonsignificance was not clearly erroneous.

■ In addition, Jefferson County prepared an EIS for its comprehensive plan in January 1979. The Code implements the plan. "[I]f environmental issues have previously been considered or no new information or developments have intervened since the last 'major action', a new or revised impact statement is not necessary." *Loveless v. Yantis*, 82 Wn.2d 754, 764-65, 513 P.2d 1023 (1973). SEPA requires only that the agency review previously ignored environmental considera-

tions as part of its evaluation of major actions. *Loveless*, 82 Wn.2d at 764-65; *see also* RCW 43.21C.034 (Laws of 1993, ch. 23, § 1).

## PLANNING ENABLING ACT

Leavitt contends that the Board, in enacting the Code, failed to follow the procedures set forth in the Planning Enabling Act, RCW 36.70. Specifically, she claims that (1) the published notice of the June hearings was defective because it did not recite the penalties section in full; (2) the Board illegally made extensive changes to the draft code following the June hearings without further public hearings and without making findings; (3) in adopting a code that varied from the published version, the Board acted illegally and violated Leavitt's right to notice; and (4) the Code as adopted is deficient because it does not include official maps. Leavitt claims that these alleged violations of statute deprived her and the public at large of procedural due process.

### 1

### Notice of the June Hearings

Under RCW 36.70.640,[4] a board of county commissioners "may initiate consideration" of an official control ordinance intended to implement a comprehensive plan. The board must refer the proposed control to the planning agency for an advisory report. RCW 36.70.640, .650. After receiving the report, the board must proceed under RCW 36.70.630,[5] which

---

[4]In full, RCW 36.70.640 provides as follows:

"When it deems it to be for the public interest, the board may initiate consideration of an ordinance establishing an official control, or amendments to an existing official control, including those specified in RCW 36.70.560. The board shall first refer the proposed official control or amendment to the planning agency for report which shall, thereafter, be considered and processed in the same manner as that set forth in RCW 36.70.630 regarding a change in the recommendation of the planning agency."

[5]RCW 36.70.630 sets forth the procedures a board must use when it wishes to change an official control recommended by a planning agency. In full, the statute provides as follows:

"If after considering the matter at a public meeting as provided in RCW 36.70.620 the board deems a change in the recommendations of the planning agency to be necessary, the change shall not be incorporated in the recommended control

requires the board to hold public hearings before incorporating changes into the proposed control. RCW 36.70.640, .630. The board must give "[n]otice of the time, place and purpose of" such a hearing by publication "at least ten days before the hearing". RCW 36.70.590, .630.

In this case, the Board did initiate consideration of the Code under RCW 36.70.640. The Board received the Commission's report, held a public workshop, compiled a list of revisions, and then published notice of four hearings to be held throughout the county. The published notice contained a summary of the Code, as permitted by RCW 36.32.120(7), and was published three times before the public hearings.

█ Leavitt does not contend that the summary was inadequate to apprise her or the public of the precise nature of the hearings. Instead, citing RCW 65.16.160(2), she argues the notice was defective because it did not include the full text of the draft penalty sections. However, RCW 65.16.160(2) applies only when a law requires the county generally to publish the *full text* of a proposed ordinance. RCW 65.16.160(1) then describes circumstances when summaries are permissible and RCW 65.16.160(2) states when (1) does not apply. Since RCW 36.32.120(7) and RCW 36.70.590 allow the county to print a summary, the provisions of RCW 65.16.160(2) are not applicable here.

2

Changes to the Draft Ordinance Following
Public Hearings

Leavitt further argues that the Board could not incorporate the public comment it received at the public hearings into the draft ·without holding additional public hearings and providing a rationale for the revisions. We disagree. The Board provided Leavitt and the general public with notice and many opportunities to comment on the proposed code.

until the board shall conduct its own public hearing, giving notice thereof as provided in RCW 36.70.590, and it shall adopt its own findings of fact and statement setting forth the factors considered at the hearing and its own analysis of findings considered by it to be controlling."

Leavitt exercised nearly every one of those opportunities. Nor does Leavitt point to any particular substantive revision in the Code which might call for a new hearing. Before actually adopting the Code, the Board published the entire proposed ordinance. We are satisfied that the Board did not violate Leavitt's fundamental rights when it adopted the Code without conducting additional public hearings. *See Chaussee v. Snohomish Cy. Coun.*, 38 Wn. App. 630, 642, 689 P.2d 1084 (1984); *Barrie v. Kitsap Cy.*, 84 Wn.2d 579, 585, 527 P.2d 1377 (1974).

3

### Amendments to the Proposed Code
### After Publication

Leavitt challenged the Board's passage of an ordinance on October 16, 1989, that differed from the published draft code. She claims that this violated RCW 36.70.590, which requires notice sufficient to "reasonably apprise interested parties of the contemplated action that is pending". *Glaspey & Sons, Inc. v. Conrad*, 83 Wn.2d 707, 710, 521 P.2d 1173 (1974).

As we noted above, the Board, at a public and advertised meeting, approved four revisions to the draft Code before voting to adopt it. The County contends that these were minor clarifying revisions. In her appellate brief, Leavitt refers to "significant changes" but she fails to discuss or identify any particular revision or its significance. It appears that Leavitt, dissatisfied with the Code as adopted, is challenging the Board's procedure based on perceived technical deficiencies. However, to obtain relief pursuant to a constitutional writ of certiorari she must show a violation of her fundamental rights. She has not identified such a violation with regard to the Board's amendments. This claim must fail.

4

### Failure To Adopt Official Maps

Finally, Leavitt claims that the Board failed to comply with the substantive requirements of RCW 36.70 by not

adopting, as part of the Code, official maps showing the exact boundaries of designated areas. The published proposed code contained a map which was not "parcel specific". The Code as adopted does not include maps although it contains a statement that the development code map "is not intended to be parcel specific".

■ The Legislature allows, but does not require, counties to adopt maps as part of an official control. RCW 36.70.020(11), .560. Maps included in an official control are to depict "exact boundaries" of zones and the "exact alignment" and "exact location" of various features depicted on the maps. RCW 36.70.560. Jefferson County did not violate the Planning Enabling Act when it failed to include a map with the Code. As Leavitt conceded at oral argument, the absence of a map simply makes the Code incomplete and unenforceable until the Board adopts the map referenced by the Code. The inability to enforce the Code prejudices only the County, not Leavitt.

The Board did not violate Leavitt's fundamental rights by acting illegally or in a manifestly arbitrary and capricious manner. Although there may be some technical defects in the process, we are assured, after reviewing the entire record, that the Board did not deprive Petitioner of notice of its intended actions nor of the opportunity to comment on those actions. Nor did it clearly err when it issued a determination of nonsignificance.

We reverse the Superior Court's vacation of the Board's actions and that court's determination that the Code is null and void.

MORGAN, C.J., and HOUGHTON, J., concur.