[No. 25760-2-II.   Division Two.   May 25, 2001.]

JEFFERSON COUNTY, *Respondent*, v. LAKESIDE INDUSTRIES, ET AL., *Appellants*.

---

*Alan L. Wallace, Geri Ann S. Baptista,* and *Nancy B. Rogers* (of *Cairncross & Hempelmann, P.S.*), for appellants.

*Juelie Dalzell, Prosecuting Attorney,* and *David W. Alvarez, Deputy,* for respondent.

*Brenda S. Molner* and *Stephen J. Kennedy* (of *Ater, Wynne, Hewitt, Dodson & Skeritt*), for intervenors.

ARMSTRONG, C.J. — Jefferson County adopted its first land use code in 1989. The trial court ruled that the code was illegal, but we held that the code was not illegal, simply unenforceable because it was incomplete—the code referred to maps that were never adopted. Instead of completing the 1989 code, the County adopted a new land use code in 1994.

Lakeside Industries, Inc., began batching asphalt at its gravel pit in 1990. The 1989 code would have required a conditional use permit for asphalt batching, but Lakeside claimed it had a "grandfathered" nonconforming use because the 1989 code was unenforceable. In 1998, after neighbors complained, the County brought this action for declaratory relief, contending that Lakeside had no right to continue batching asphalt. The trial court granted summary judgment in the County's favor, and Lakeside now appeals. We reverse.

## FACTS

The J.D. Shotwell Company began operating a gravel pit at Cape George in the 1940s. Shotwell and other companies crushed rock and batched asphalt at the pit until 1984. Lakeside Industries, Inc., purchased crushed rock from the Cape George pit and batched asphalt at the site from 1981 to 1984. In 1990, Lakeside purchased the Cape George pit from Shotwell and began batching asphalt there again.

Meanwhile, Jefferson County adopted its first land use code in 1989. The code required a conditional use permit for all industries associated with resource production. But it allowed "grandfathered" uses to continue. Lakeside considered the gravel pit to be such a grandfathered nonconforming use. In 1991, a superior court vacated the 1989 development code and declared it null and void for violating the

State Environmental Policy Act (SEPA), chapter 43.21C RCW, and the Planning Enabling Act, chapter 36.70 RCW.

Soon thereafter, the Jefferson County Board of County Commissioners decided that neither rock crushing nor asphalt batching were grandfathered uses at the Cape George site. Lakeside then applied for a conditional use permit, but the Jefferson County Prosecuting Attorney advised Lakeside that no permit was necessary because the County had no effective development code. Responding to the superior court's order vacating the 1989 code, the County passed an interim zoning ordinance in 1992. This code also provided that grandfathered uses could continue.

The County appealed the superior court's order vacating the 1989 code, and we reversed the order in *Leavitt v. Jefferson County*, 74 Wn. App. 668, 875 P.2d 681 (1994). But we also held that the code was "incomplete and unenforceable" because the County never adopted maps the code referenced. *Leavitt*, 74 Wn. App. at 684.

Lakeside has continued to batch asphalt at the Cape George pit since 1990. Rock crushing is now permitted at the Cape George pit under a 1995 ordinance designating the site as a "mineral land of long-term commercial significance." Clerk's Papers (CP) at 80. Thus, the only issue is whether Lakeside can batch asphalt at the site.

In 1998, the County required Lakeside to stop batching asphalt until it obtained a conditional use permit, but Lakeside refused to apply for a permit, contending that batching is a legal nonconforming use. The County sought a declaratory judgment. The Jefferson County Superior Court allowed Neighbors Against Asphalt Batching (NAAB) to intervene. The trial court ruled in the County's favor on cross motions for summary judgment, and Lakeside now appeals.

ANALYSIS

Lakeside continues to argue that asphalt batching at its

Cape George pit is a legal nonconforming use. Lakeside maintains that it began batching asphalt in 1990 and has continued to do so since then. It argues that the County's 1989 development code was never effective and, therefore, its asphalt batching was a legal nonconforming use after the County adopted interim zoning in 1992.

The County and NAAB contend that because we vacated the trial court's ruling that the 1989 code was "null and void," the code had some effect and, thus, Lakeside's batching in 1990 was not a legal nonconforming use. The County and NAAB also argue that the County Commissioners' 1991 decision, which Lakeside did not appeal, bars Lakeside from litigating whether it has a legal nonconforming use.

■ We review a summary judgment de novo. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); *Kruse*, 121 Wn.2d at 722.

## I. Establishing a Legal Nonconforming Use

■ Lakeside argues that its asphalt batching at the Cape George pit is a legal nonconforming use. To establish such use, a landowner must show that (1) the use began before the applicable zoning ordinance was adopted, (2) the use was lawful before the ordinance was adopted, (3) the landowner did not abandon the use after the ordinance was adopted, and (4) the use was continuous, not occasional or intermittent. *N./S. Airpark Ass'n v. Haagen*, 87 Wn. App. 765, 772, 942 P.2d 1068 (1997). Lakeside argues that when it reestablished asphalt batching at Cape George in 1990, the County had no enforceable development code and, therefore, the use was legal. Lakeside further argues that the first valid code was the 1992 interim zoning code.

Lakeside's argument arises from the maps issue in *Leavitt*. The County's published proposed code contained a

map that was not parcel-specific, and the adopted 1989 code did not contain a map. *Leavitt*, 74 Wn. App. at 684. We held that the County did not violate the Planning Enabling Act by failing to include a parcel-specific map with the code because the Act specifically allows, but does not require, adopting maps as part of a land use code. *Leavitt*, 74 Wn. App. at 684. We concluded that "the absence of a map simply makes the Code *incomplete and unenforceable* until the Board adopts the map referenced by the Code." *Leavitt*, 74 Wn. App. at 684 (emphasis added).[1]

But the County never adopted the maps associated with its 1989 development code. Instead, the County adopted an interim zoning code in 1992 and a new land use code in 1994. In the meantime, Lakeside reestablished asphalt batching at Cape George in 1990.

Lakeside argues that because we ruled that the 1989 code was incomplete and unenforceable without parcel-specific maps, the 1989 code was never effective. If the 1989 code was never effective, the County had no valid development code in effect when Lakeside reestablished asphalt batching at Cape George, and Lakeside can establish the first two legal elements required to establish a legal non-conforming use.

In response, the County points out that the Planning Enabling Act does not require maps. Further, the County argues that it did not need maps to enforce the code against Lakeside because the code required a conditional use permit for all heavy industrial uses. These arguments ignore our holding in *Leavitt*. When we filed *Leavitt*, we were aware that the Planning Enabling Act did not require maps. *See Leavitt*, 74 Wn. App. at 684. Yet, we held that the code was incomplete and unenforceable because the code referred to maps that did not exist. *Leavitt*, 74 Wn. App. at 684. We did not hold that the code was unenforceable only

---

[1] If a development code *does* include maps, they must "depict 'exact boundaries' of zones and the 'exact alignment' and 'exact location' of various features depicted on the maps." *Leavitt*, 74 Wn. App. at 684 (quoting RCW 36.70.560). Thus, even if the County had adopted its proposed map, which was not parcel-specific, that map would have been inadequate.

where maps were needed; rather, we held that the County could never enforce an incomplete development code. *Leavitt*, 74 Wn. App. at 684.

Lakeside also argues that without parcel-specific maps, the County cannot determine whether a proposed use will have "minimal impacts to the designated use of surrounding properties," which the County must find under the 1989 code before granting a conditional use permit. CP at 471. The County responds that it can determine the impact on adjacent uses without maps by using on-site inspections or other methods. Lakeside argues that such a method would be contrary to the rule that ordinances must contain standards to avoid arbitrary and discretionary enforcement, citing *Grant County v. Bohne*, 89 Wn.2d 953, 955, 577 P.2d 138 (1978), and *Burien Bark Supply v. King County*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986).

■ We reaffirm our holding in *Leavitt*. Because the County never adopted the maps contemplated by the 1989 code, the code was incomplete and unenforceable. This is not a case where the County adopted a complete land use code but failed to provide the means to enforce it. In such a situation, the County could reasonably argue that because the code was complete, Lakeside's asphalt batching use was unlawful even though the County lacked a mechanism to enforce the code. Here, the 1989 code was unenforceable because it was *incomplete*. And because it was incomplete, landowners in Jefferson County could not ascertain with some measure of certainty what uses it permitted. *See Burien Bark Supply*, 106 Wn.2d at 871.

Because the 1989 code was never enforceable, Lakeside can establish the first two elements of a legal nonconforming use: It began asphalt batching before the County adopted an enforceable development code, and asphalt batching was legal in 1990.

## II. Abandonment

■ Once a landowner establishes that the use was

lawful and it began before the applicable zoning ordinance was adopted, the burden shifts to the party contesting the legality of the use to show abandonment or discontinuity. *Van Sant v. City of Everett*, 69 Wn. App. 641, 648, 849 P.2d 1276 (1993). The trial court did not rule on the abandonment issue, and the County does not address it. Lakeside maintains that it has not "abandoned" asphalt batching at Cape George since 1990. To show abandonment, the County must show (1) an intent to abandon or (2) an overt act or failure to act that implies that the landowner claims no interest in the right to continue the nonconforming use. *Van Sant*, 69 Wn. App. at 649. On remand, the County may attempt to show abandonment.

## III. Claim or Issue Preclusion

The County and NAAB contend that either claim or issue preclusion bars Lakeside from asserting that it has a legal nonconforming use. These doctrines prevent parties from asserting claims or issues already litigated and decided in prior proceedings. *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 328-29, 941 P.2d 1108 (1997). The County argues that the County Commissioners' 1991 decision that asphalt batching was not a grandfathered use at Cape George bars Lakeside from now claiming otherwise.

To assert claim preclusion as a defense, the two proceedings must share the same (1) subject matter, (2) cause of action, and (3) persons and parties. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995). Issue preclusion requires that (1) the issue being raised was litigated in a prior proceeding, (2) the prior proceeding resulted in a final judgment on the merits of the issue, (3) the parties are the same, and (4) applying the doctrine will not work an injustice. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 562, 852 P.2d 295 (1993). Claim and issue preclusion apply to both judicial and quasi-judicial decisions. *Lejeune v. Clallam County*, 64 Wn. App. 257, 264-65, 823 P.2d 1144 (1992). One purpose of the preclusion doc-

trines is to prevent attempts to relitigate matters or raise new issues that should have been raised in the earlier proceeding. *Kelly-Hansen*, 87 Wn. App. at 329-30. But "one cannot say that a matter should have been litigated earlier if, even though it could have been litigated earlier, there were valid reasons for not asserting it earlier." *Kelly-Hansen*, 87 Wn. App. at 331.

■ ■ Neither issue preclusion nor claim preclusion prevents Lakeside from claiming a grandfathered use. The Board of County Commissioners made its decision on Lakeside's nonconforming use after all stays of the superior court's order in *Leavitt*, declaring the 1989 code null and void, had expired. The trial court here reasoned that Lakeside could not then rely on the superior court's ruling in *Leavitt*. We disagree. The superior court had ruled that the 1989 code was null and void. Lakeside could rely on that decision until we vacated the ruling in 1994 and held that the code was simply unenforceable. Lakeside had a valid reason for not appealing the Board's decision.

Furthermore, because the 1989 code was not enforceable in 1991, the commissioners lacked authority to require a conditional use permit for asphalt batching. Their decision was, therefore, without legal effect and not a final decision on the merits.

We reverse the trial court's summary judgment in favor of the County and remand for summary judgment in favor of Lakeside unless the County can show that Lakeside abandoned asphalt batching after 1990.

HUNT and QUINN-BRINTNALL, JJ., concur.