FILED
COURT OF APPEALS
DIVISION II

2014 AUG -5 AM 10: 37

STATE OF WASHINGTON

BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| ARTHUR WEST and JERRY L. DIERKER JR., | No. 43876-3-II |
| Appellants, | |
| v. | |
| PORT OF OLYMPIA; WEYERHAEUSER CO. d/b/a WEYCO,; EDWARD GALLIGAN; BILL MCGREGGOR, ROBERT VAN SCHOORL, and PAUL TELFORD, | UNPUBLISHED OPINION |
| Respondents, | |

MELNICK, J. — Arthur West and Jerry Dierker appeal several court orders culminating in the dismissal of their Public Records Act (PRA)[1] and State Environmental Policy Act (SEPA)[2] claims. West filed a public records request with the Port of Olympia (Port) under the PRA, seeking records related to the Port's lease with Weyerhaeuser. Unsatisfied with the records the Port produced, West filed an action in superior court against the Port and Weyerhaeuser alleging, among other things, violations of the PRA and the SEPA. West later filed an amended complaint that included Jerry Dierker as an additional plaintiff. The trial court bifurcated the PRA claims from the SEPA claims, dismissed the SEPA claims for lack of standing, and dismissed the PRA claims against Weyerhaeuser because it is not a public entity. After over a year of inaction, West attempted to file a show cause hearing on the remaining PRA claims. The Port filed a motion to dismiss the PRA claims under CR 41(b)(1) and the court's inherent

---

[1] Ch. 42.56 RCW.

[2] Ch. 43.21C RCW.

authority. The trial court dismissed the PRA claims after concluding that West and Dierker deliberately and willfully caused excessive delays.

West and Dierker appeal, arguing the trial court erred when it (1) dismissed the PRA claims for excessive delay, (2) entered and construed the bifurcation order, and (3) dismissed the SEPA claims for lack of standing. West and the Port seek attorney fees on appeal. We hold that the trial court abused its discretion in dismissing the PRA claims because its conclusion that West and Dierker acted willfully is not supported by its findings. We additionally hold that, (1) Dierker does not have standing to enforce the PRA claims, (2) West and Dierker waived their arguments regarding the bifurcation order, (3) the trial court properly concluded that West and Dierker lacked standing for their SEPA claims, and (4) none of the parties is entitled to attorney fees. Accordingly, we affirm the trial court's bifurcation order and order dismissing the SEPA claims, but reverse the order of dismissal of the PRA claims and remand for further proceedings on this claim.

FACTS

On March 17, 2007, West filed a public records request with the Port, seeking records related to the Port's lease with Weyerhaeuser. On June 12, 2007, the Port sent West a letter listing the records it provided and the records it considered exempt. The letter stated that the Port considered the request completed.

On June 18, 2007, West filed a complaint against the Port and Weyerhaeuser for alleged violations of the PRA, SEPA, and the Harbor Improvement Act. That same day, he obtained an ex parte show cause order compelling the Port to appear on June 29 and show cause why it should not be required to release the exempt records. This hearing never occurred. West filed an amended complaint in July 2007 that included Dierker as a plaintiff.

In August 2007, Weyerhaeuser moved to bifurcate the PRA claims from the rest of West's and Dierker's claims. West agreed, and the trial court granted the motion. Over the next few months, all the parties filed multiple motions, mostly regarding the non-PRA claims.

On April 25, 2008, the trial court entered an order dismissing the case with prejudice for lack of standing. Later, the trial court issued a clarifying order stating that the April 25 dismissal referred only to the non-PRA claims and that the PRA claims were not dismissed. On May 2,, the trial court dismissed the PRA claim against Weyerhaeuser.

West and Dierker did not take any action regarding this case until October 16, 2009, when West attempted to note the PRA case for a show cause hearing. Between October 2009 and June 2011, West attempted to set eight show cause hearings. Because of the Port's counsel's or the Judge's unavailability or because of West's failure to confirm the hearings, no hearing took place.

On June 24, 2011, the Port filed a motion to dismiss under both CR 41(b)(1), failure to prosecute, and the court's inherent power to manage a case. West filed his fifth affidavit of prejudice in this case, which resulted in a delay.

On June 29, 2012, the trial court held a hearing on the Port's motion to dismiss. The trial court granted the motion to dismiss, relying on its inherent authority to manage cases. It concluded that (1) West and Dierker "deliberately and willfully caused excessive delays," (2) the delays prejudiced the Port because, if it was found to have violated the PRA, it would be subject to daily penalties, and (3) no lesser sanction than dismissal would suffice. Clerk's Papers (CP) at 938. West and Dierker both filed motions for reconsideration. The trial court denied the motions.

West and Dierker appeal, challenging the trial court's (1) June 27, 2012 dismissal, (2) order denying reconsideration of the June 27 dismissal, and (3) May 30, 2008 dismissal of the non-PRA claims for lack of standing.

## ANALYSIS

### I.    PRA CLAIMS

West and Dierker first argue that the trial court erred when it dismissed their PRA claims for excessive delay.  Because the trial court's dismissal was based on untenable reasons, we reverse.  We also hold that (1) Dierker does not have standing to enforce the PRA claims and (2) we do not reach the merits of West's PRA claims because the trial court did not rule on this issue.

#### A.    Dierker's Standing for PRA Claims

As an initial matter, the Port argues that Dierker lacks standing to enforce the PRA request.  Because Dierker did not join in the PRA request, he has failed to show that he has a personal stake in the outcome; thus, he lacks standing to enforce West's PRA request.

"The doctrine of standing requires that a claimant must have a personal stake in the outcome of a case in order to bring suit." *Kleven v. City of Des Moines*, 111 Wn. App. 284, 290, 44 P.3d 887 (2002).  Here, Dierker joined the suit after West had filed his PRA request with the Port and after West had filed his first complaint against the Port.  The record does not show that Dierker joined with West in making the PRA request.[3]

---

[3] Dierker argues that he made his own PRA requests but they were kept out of the record by the Port.  First, Dierker could have supplemented the record with his requests. RAP 9.6(a).  Second, the complaint in this case does not mention Dierker's alleged PRA requests.

Our courts have found that people other than the person who actually made the PRA request have standing to bring a PRA action under limited circumstances. For example, in *Kleven*, the court held that the plaintiff had standing to sue under the PRA even though his attorney filed the initial PRA request. 111 Wn. App. at 290. The court determined that the complaint clearly indicated that the attorney made the request on behalf of his client. *Kleven*, 111 Wn. App. at 290.

By contrast, here, neither the PRA request nor the complaint state that West made the PRA requests on Dierker's behalf. Unlike the attorney/client relationship in *Kleven*, there is no similar relationship between West and Dierker to show that West acted on Dierker's behalf. Consequently, Dierker does not have standing to enforce the PRA claims and he is not entitled to relief relating to these claims.

B.      Dismissal of PRA Claims

West first argues that the trial court erred when it dismissed the PRA claims for excessive delay. Because the trial court's order is based on untenable reasons, we reverse.

We review a trial court's order exercising its inherent power to dismiss a case for an abuse of discretion. *Stickney v. Port of Olympia*, 35 Wn.2d 239, 241, 212 P.2d 821 (1949). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

1.      CR41 (b)(1)

CR 41(b)(1) governs involuntary dismissal for want of prosecution if the plaintiff fails to "note the action for trial or hearing within 1 year after any issue of law or fact has been joined."

5

"If the case is noted for trial before the hearing on the motion, the action shall not be dismissed." CR 41(b)(1).

Here, the Port moved to dismiss under both CR 41(b)(1), lack of prosecution, and the court's inherent authority. The trial court granted the Port's motion to dismiss, although it did not specify under which theory. To the extent that the trial court dismissed the order under CR 41(b)(1), this was an error. Dismissal under CR 41(b)(1) is not appropriate because West filed a motion to set a trial date before the hearing on the motion to dismiss.

### 2. Inherent Authority

"A court of general jurisdiction has the inherent power to dismiss actions for lack of prosecution, but only when no court rule or statute governs the circumstances presented." *Snohomish County v. Thorp Meats*, 110 Wn.2d 163, 166-67, 750 P.2d 1251 (1988) (footnote omitted). As we discussed in the previous section, CR 41(b)(1) does not apply here. "'Where dilatoriness of a type not described by CR 41(b)(1) is involved, a trial court's inherent discretion to dismiss an action for want of prosecution remains.'" *Wallace v. Evans*, 131 Wn.2d 572, 577, 934 P.2d 662 (1997) (quoting *Thorp Meats*, 110 Wn.2d at 169). "Dilatoriness of a type not described by CR 41(b)(1)" refers to unacceptable litigation practices other than mere inaction. *Wallace*, 131 Wn.2d at 577. Dismissal is justified under the court's inherent authority only when a party acts in willful and deliberate disregard of reasonable and necessary court orders. *Apostolis v. City of Seattle*, 101 Wn. App. 300, 304, 3 P.3d 198 (2000); *see, e.g., Woodhead v. Discount Waterbeds, Inc.*, 78 Wn. App. 125, 131, 896 P.2d 66 (1995) (finding the plaintiff willfully and deliberately misled the court by falsely claiming to have effected proper service). Examples include failing to comply with court rulings, failing to appear, and filing late briefs. *Bus. Servs. of Am. II, Inc. v. WaferTech LLC*, 174 Wn.2d 304, 311, 274 P.3d 1025 (2012); *see*

*also Alexander v. Food Servs. of Am., Inc.*, 76 Wn. App. 425, 430, 886 P.2d 231 (1994) (dismissing case where the plaintiff had notice of the trial and willfully chose not to attend); *Jewell v. City of Kirkland*, 50 Wn. App. 813, 821-22, 750 P.2d 1307 (1988) (dismissing case where plaintiff violated a court order by failing to post funds by a certain date).

In this instance, there are no findings showing "dilatoriness of a type not described by CR 41(b)(1)." *See Wallace*, 131 Wn.2d at 577. The trial court found there existed 17 months of inaction in the proceedings; however, mere inaction is an insufficient basis to support dismissal based on the trial court's inherent authority. *Wallace*, 131 Wn.2d at 577. The Port argues that the trial court found that West and Dierker violated a court order to "proceed with the case," Resp't Port's Br. at 20, but the trial court did not find that West or Dierker violated an order to "proceed with the case."

Additionally, even if plaintiffs' conduct could be characterized as "dilatoriness not described by CR 41(b)(1)," the trial court did not make a finding that West or Dierker acted willfully and deliberately. Here, the trial court concluded that West and Dierker deliberately and willfully caused excessive delays. But the trial court's findings do not support this conclusion. Although the findings list the various delays in this case, nothing in the findings indicates that West and Dierker deliberately and willfully acted to cause the delays. For example, the findings state that five judges were recused from this case. But the trial court did not find the affidavits of prejudice were a deliberate delay tactic. The record shows that the judges were unable to hear the case because of "conflicts and affidavits." CP at 2719. Further, in its oral ruling, the trial court expressly declined to determine whether West's eight failed attempts at setting a hearing were intentional. Because the trial court did not find, and the record

7

does not show, that West or Dierker acted in deliberate and willful disregard of a court order, the trial court based its order on untenable reasons and we reverse the dismissal of the PRA claims.

### 3. Merits of the PRA Claim

West asks us to determine the merits of his PRA claim. RCW 42.56.550(1), which governs judicial review of agency actions under the PRA, states that the *superior court* may require the agency to show why it refused to allow inspection of the withheld records. Here, the superior court did not hold a hearing or make a decision on the merits of the PRA claim. We remand this claim to the trial court. *See Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 106, 117 P.3d 1117 (2005) (remanding to the trial court where the plaintiff had not yet had a court review the allegedly exempt documents).

## II. BIFURCATION

Next, West and Dierker make various claims regarding the trial court's bifurcation order. But because they failed to object in the trial court, this argument is waived on appeal. RAP 2.5(a). Additionally, to the extent they are arguing that the delay in commencing the PRA claims is the result of the bifurcation order and not their own inaction, it is unnecessary to reach this argument in light of our decision to reverse the trial court on this issue.

## III. STANDING FOR NON-PRA CLAIMS

West and Dierker next argue that the trial court erred by dismissing their non-PRA claims for lack of standing. Because West's and Dierker's claimed injuries are speculative and nonspecific, we hold that they lacked standing.

To establish standing to challenge an action under SEPA, a party must (1) show that the alleged endangered interests fall within the zone of interests protected by SEPA and (2) allege an injury in fact, which requires evidence of specific and perceptible harm. *Kucera v. Dep't. of*

*Transp.*, 140 Wn.2d 200, 212, 995 P.2d 63 (2000). A party alleging a threatened injury instead of an existing injury must show that the injury will be "immediate, concrete, and specific" rather than conjectural or hypothetical. *Leavitt v. Jefferson County*, 74 Wn. App. 668, 679, 875 P.2d 681 (1994) (quoting *Trepanier v. Everett*, 64 Wn. App. 380, 383, 824 P.2d 524 (1992)). The party's interest must be more than the general public's abstract interest in having others comply with the law. *Chelan County v. Nykreim*, 146 Wn.2d 904, 935, 52 P.3d 1 (2002).

Here, the trial court found that West's and Dierker's interests were arguably within the zone of interest protected by SEPA but that they failed to allege an injury in fact. CP at 94 ("Plaintiffs have not alleged immediate, concrete, specific injury required to establish standing or injury particular to them beyond any other member of the public."). Therefore, we review whether West and Dierker have alleged an immediate, concrete, and specific injury.

In *Suquamish Indian Tribe v. Kitsap County*, 92 Wn. App. 816, 831, 965 P.2d 636 (1998), the court held that the plaintiffs had standing to contest a proposed residential development plan because their properties were adjacent to the planned developments and the plan would result in increased traffic on the roads plaintiffs used to access their properties. Similarly, in *Kucera*, the court held that the plaintiffs, who owned shoreline property, sufficiently alleged injury in fact when they claimed that wakes off of a ferry damaged the shorelines. 140 Wn.2d at 213. The plaintiffs in these actions alleged concrete injuries to their specific interests.

By contrast, West and Dierker have alleged only speculative and general injuries. They assert that the Weyerhaeuser lease will result in greater pollution in the area, increased traffic around the port, and negative effects on wildlife. But these harms are not particularized like the harms asserted by the adjacent property owners in *Suquamish Indian Tribe* and *Kucera*.

9

Furthermore, the claims are hypothetical (e.g., ships may sink; there may be more boat wakes, which disrupt the sand lance habitat and, in turn, affect animals further up the food chain; and the new activity may disturb areas that plaintiffs claim are already polluted). West's and Dierker's allegations were insufficient to establish injury in fact and, thus, they do not have standing.

IV.    ATTORNEY FEES

West requests attorney fees under RAP 18.1 and RCW 42.56.550(4). RCW 42.56.550(4) states:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action.

A party prevails if "the records should have been disclosed on request." *Spokane Research & Def. Fund,* 155 Wn.2d at 103. Although West successfully argued that the trial court improperly dismissed his PRA claims, he has not yet shown that the Port withheld records that should have been immediately disclosed. Accordingly, he has not prevailed under RCW 42.56.550(4) and attorney fees are not appropriate at this stage in the proceeding.

Dierker also seeks costs and sanctions based on the PRA claims. Because Dierker does not have standing to enforce the PRA claims, we deny his request.

The Port requests attorney fees under RAP 18.9 and RCW 4.84.185 for defending a frivolous appeal. An action is frivolous if, considering the action in its entirety, it cannot be supported by any rational argument based in fact or law. *Dave Johnson Ins., Inc. v. Wright,* 167 Wn. App. 758, 785, 275 P.3d 339, *review denied,* 175 Wn.2d 1008 (2012). West successfully appealed the trial court's dismissal of the PRA claims. This action was not frivolous and we deny the Port's attorney fee request.

43876-3-II

We reverse the trial court's dismissal of West's PRA claims and remand for further proceedings. We affirm the trial court's bifurcation order and order dismissing the SEPA claims. We deny all parties' requests for attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Johanson, C.J.