# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| GARY L. MCGREAL and JESSICA MCGREAL, | No.  53533-5-II |
| Appellants, | |
| v. | |
| PEAK FORECLOSURE SERVICES, INC., a California Corporation; SHELLPOINT PARTNERS, LLC, a Delaware corporation with subsidiary operation in South Carolina; and BYRON HARRIS, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — This is the second of two lawsuits filed by Gary and Jessica McGreal relating to a foreclosure sale of their real property.  Both lawsuits were summarily dismissed.  In this case, the McGreals sued Peak Foreclosure Services Inc., Shellpoint Partners LLC,[1] and Byron Harris.  Peak was the successive trustee, Shellpoint serviced the loan, and Harris purchased the property.  The McGreals reallege three of the same causes of action, but add two new theories of recovery.  The trial court dismissed the claims against Harris on summary judgment, and dismissed the claims against Peak and Shellpoint under Cr 12(b)(6) for failure to state a claim for which relief can be granted.

---

[1] The McGreals named "Shellpoint Partners LLC" as a defendant in their complaint, but according to respondent's brief, the correct name is "NewRez LLC fka New Penn Financial LLC dba Shellpoint Mortgage Servicing."  Br. of Resp't (Peak) at 8 n.1.

The McGreals appeal the two dismissal orders. We hold that the action is barred by res judicata, and affirm.

FACTS

I. FORECLOSURE

In 1998, Gary and Jessica McGreal purchased real property in Kitsap County. In 2006, the McGreals refinanced their property, obtaining a loan secured by a deed of trust from Countrywide Home Loans Inc. In 2008, Countrywide Home Loans Inc. was acquired by Bank of America.

The McGreals stopped making payments on their Countrywide loan in 2011. That same year, Bank of America sold the note to Bank of New York Mellon. A subsidiary of Bank of America continued to service the loan until 2013 when the loan was transferred to Resurgent Mortgage Servicing of Greenville, S.C. Resurgent was then acquired by Shellpoint Partners LLC., a respondent in this case. The McGreals allege that on September 15, 2014, they received a notice of default from Shellpoint. The McGreals allege that Shellpoint did not contact them and did not send them a notice of preforeclosure options required under RCW 61.24.031(5).[2] In October 2014, Peak issued a notice of trustee's sale. That notice contained the legal description of both lots owned by the McGreals that were now subject to the foreclosure.[3]

---

[2] RCW 61.24.031(5) permits issuance of a notice of default when a borrower has been contacted with a statutorily required letter of preforeclosure options and where the lender has failed to meet with the borrower despite statutorily defined due diligence having occurred.

[3] The deed of trust to the property had one tax parcel number printed and one handwritten, and contained the legal descriptions of both lots: Lots 3 and 4 Short Plat No. 1143.

The McGreals contacted a foreclosure consultant, Donna M. Loitz of American Financial Solutions, who contacted Peak Foreclosure Services Inc., an agent of Shellpoint and a respondent in this case, to obtain a copy of the notice required under RCW 61.24.031(5). Over the course of several months, Shellpoint failed to provide the McGreals with the required notice despite repeated requests.

The McGreals also discovered accounting irregularities in Shellpoint's loan balance calculation, and Loitz sent a letter to Shellpoint asking it to explain these irregularities. The McGreals also filed a complaint with the Washington State Attorney General's Office (AGO), which asserted that their property could not be subject to a nonjudicial foreclosure because it was for agricultural purposes, and that they had not received a notice under RCW 61.24.031(5).[4] The AGO sent a letter to Shellpoint requesting that they explain their failure to provide the McGreals with the required notice. The AGO also notified Shellpoint that the McGreals asserted their property was agricultural property. Shellpoint failed to respond timely to the AGO's request, and when it did, it failed to produce the required notice. Shellpoint failed to respond entirely to Loitz's request. During the entire foreclosure process, Shellpoint's and Peak's documents identified the property by legal description and not by street address.[5]

---

[4] The McGreals asserted in their complaint that their property was covered with extensive fruit and nut orchards, and vegetable and flower gardens. They also assert that a local cider producer harvested their apples to produce cider, and that the property had been previously designated as agricultural property with the USDA (United States Department of Agriculture) by a previous owner.

[5] In 2015, Washington's "Deeds of Trust Act" (DTA), chapter 61.24 RCW, required only that a notice of trustee's sale contain a legal description of the property, not a mailing address or tax parcel number. *See* prior RCW 61.24.040(1)(f). In 2018, the DTA was amended to require inclusion of the tax parcel number. *See* Second ESHB 2057, ch. 306, LAWS OF 2018.

In April 2015, the subject property was sold at the trustee's sale to BDH Holdings Inc., a limited liability company part owned by Byron Harris, a respondent in this case.

## II. 2015 LAWSUIT

In April 2015, the McGreals sued Peak, Shellpoint, Bank of New York Mellon, and Johnny Dahinton, the trustee sales officer.[6] The McGreals filed a second amended complaint, which alleged three causes of action: failure to follow statutory foreclosure process, failure of trustee to act in good faith, and violations of the Consumer Protection Act, chapter 19.86 RCW.

The McGreals' second amended complaint contained substantially the same fact pattern as described above. In their first cause of action for failure to follow statutory foreclosure process, the McGreals alleged that Shellpoint and Peak failed to comply with the foreclosure requirements under RCW 61.24.031 by failing to deliver required notices, failing to conduct due diligence, and by providing erroneous notices. In their second cause of action for failure of trustee to act in good faith, the McGreals alleged that Shellpoint and Peak negligently, knowingly, and intentionally failed in and delayed compliance with RCW 61.24.031, and knowingly conducted an illegal foreclosure sale, all in violation of their fiduciary duties as trustee. In their third cause of action for violations of the Consumer Protection Act, the McGreals realleged the same facts from the other two causes of action as per se violations of the Consumer Protection Act.

---

[6] The McGreals include in this record an unsigned copy of their first complaint in April 2015. The parties do not dispute that this unsigned copy is an authentic copy of the actual signed complaint filed in 2015.

4

In September 2016, the trial court granted summary judgment against the McGreals in favor of each of the defendants for all the claims. Thus, the McGreals' lawsuit was dismissed with prejudice.

### III. 2019 Lawsuit

In March 2019, the McGreals again sued Peak and Shellpoint, but also included Harris as a new defendant. Much of the 2019 complaint was the same as the second amended complaint from the prior lawsuit.[7] In addition to the same facts substantiating the three causes of action from 2015, the 2019 complaint also alleged new facts about a "theft of second lot" by Harris and the agricultural use of the land by the McGreals. Clerk's Papers (CP) at 20. The complaint included two causes of action not in the prior lawsuit: failure to use judicial foreclosure on identified agricultural property, and theft of second lot.

Regarding failure to use judicial foreclosure on identified agricultural property, the McGreals alleged that they provided notice to Peak and Shellpoint that their property was purportedly agricultural land, but that Peak and Shellpoint carried out an allegedly illegal foreclosure sale anyway. Regarding theft of second lot, the McGreals alleged that Peak and Harris "conspired" to steal a second plot of the McGreals' land through falsifying a deed to include the second lot as part of the proceeds of the foreclosure sale. CP at 20. The McGreals allege in their complaint that the deed of trust was not secured by the second lot.[8]

---

[7] The 2019 suit had five causes of action: failure to use judicial foreclosure on identified agricultural property, failure to follow statutory foreclosure process, failure of trustee to act in good faith, violations of the Consumer Protection Act, and theft of second lot.

[8] Ownership of the second lot was part of the 2015 lawsuit.

In June 2019, Harris moved for summary judgment based on res judicata, waiver, bona fide purchaser, the McGreals' concession that the property was not used for agricultural purposes, and the fact that the legal documents described both parcels of land. The trial court granted his motion, dismissing all claims against him with prejudice. Peak and Shellpoint then moved for dismissal under CR 12(b)(6), based on failure to state a claim, and the doctrine of res judicata. Peak and Shellpoint asked the court to take judicial notice of six exhibits, including the note, the deed of trust, and assignment of deed of trust, as well as documents from the prior lawsuit. The trial court granted this motion as well, thus dismissing all claims with prejudice.

The McGreals appeal the trial court's orders granting summary judgment as to Harris, and the CR 12(b)(6) motion to dismiss as to Peak and Shellpoint.

ANALYSIS

In their pro se brief on appeal, the McGreals reallege the substance of their 2015 and 2019 complaints against Peak, Shellpoint, and Harris. They do not specifically address res judicata or any other argument raised by the respondents.

Harris, Peak, and Shellpoint all argue that the McGreals' claims are barred under the doctrine of res judicata. Harris also argues waiver, bona fide purchaser, that the McGreals attested that the property was not agricultural, and that all the deeds and notices contain the correct legal description of both lots. Peak and Shellpoint additionally make waiver and statute of limitations arguments. Although many of respondents' arguments have merit, we consider only res judicata because it is dispositive.

A.      Legal Principles and Standard of Review

      1. *Summary Judgment*

A motion for summary judgment is granted when the movant establishes through "pleadings, depositions, answers to interrogatories and admissions on file, together with . . . affidavits, if any" and "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). When a reasonable person could reach but one conclusion from all of the evidence, summary judgment will be affirmed. *Peterson v. Kitsap Cmty. Fed. Credit Union*, 171 Wn. App. 404, 416, 287 P.3d 27 (2012).

We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Singh v. Fed. Nat'l Mortgage Assoc.*, 4 Wn. App. 2d 1, 5, 428 P.3d 373 (2018).

      2. *CR 12(b)(6) Motion*

A dismissal under CR 12(b)(6) is appropriate when a plaintiff cannot prove any set of facts in the complaint that would entitle the plaintiff to relief. *Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 843, 347 P.3d 487. When reviewing a dismissal under CR 12(b)(6), this court presumes that all facts alleged in a complaint are true, but this court is not required to accept any of the complaint's legal conclusions. *Jackson*, 186 Wn. App. 2d at 843.

On CR 12(b)(6) motions, a trial court can take judicial notice of public documents "if the authenticity of those documents cannot be reasonably disputed." *Jackson*, 186 Wn. App. 2d at 844. Additionally, a trial court can consider information outside of the complaint without converting a CR 12(b)(6) motion to a summary judgment motion if the "'basic operative facts are undisputed and the core issue is one of law.'" *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d

820, 827 n.2, 355 P.3d 1100 (2015) (quoting *Ortblad v. State*, 85 Wn.2d 109, 111, 530 P.2d 635 (1975)).

Here, the trial court judge took judicial notice of the documents from the 2015 action, including the second amended complaint, and summary judgment order, which Peak attached to their CR 12(b)(6) motion. The basic operative facts in this case are undisputed, and the core issue, whether res judicata applies, is one of law. This court reviews CR 12(b)(6) dismissals de novo. *Woodward v. Taylor*, 184 Wn.2d 911, 917, 366 P.3d 432 (2016).

B.      Res Judicata

Res judicata, otherwise known as claim preclusion, bars relitigating a claim or cause of action that has been settled in a final judgment. *Storti v. University of Washington*, 181 Wn.2d 28, 40, 330 P.3d 159 (2014). Res judicata applies to matters that were actually litigated and those that "'could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding.'" *Emeson v. Dep't of Corr.* 194 Wn. App 617, 626, 376 P.3d 430 (2016) (quoting *DeYoung v. Cenex Ltd.*, 100 Wn. App. 885, 891-92, 1 P.3d 587 (2000)). The party asserting res judicata bears the burden of proof. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004). Whether res judicata applies is a question of law we review de novo. *Emeson*, 194 Wn. App. at 626. The threshold question for applying res judicata is whether there has been a valid and final judgment on the merits in a prior suit. *Hisle*, 151 Wn.2d at 865. A grant of summary judgment at a prior proceeding is considered a final judgment on the merits. *DeYoung*, 100 Wn. App. at 891.

A party must establish four requirements for res judicata to apply. *Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 730, 254 P.3d 818 (2011). Res judicata applies when there is a

sameness in (1) subject matter, (2) cause of action, (3) persons or parties, and (4) quality of the persons for or against whom the claim is made. *Williams*, 171 Wn.2d at 730, 254 P.3d 818; *DeYoung*, 100 Wn. App. at 891.

Here, there has been a final judgment on the merits. The 2015 suit was resolved when summary judgment was granted against the McGreals, ending the litigation for all the causes of action in their entire second amended complaint, including failure to follow statutory foreclosure process, failure of trustee to act in good faith, and violations of the Consumer Protection Act. Our inquiry then turns to the four enumerated elements required to apply res judicata to the claims in the instant action.

1. *Subject Matter*

Regarding the first element, both the first and second lawsuits involve the nonjudicial foreclosure of the McGreals' property. Both suits involve a single transaction—an alleged unlawful foreclosure—involving a single lot of land (Lots 3 and 4 Short Plat No. 1143 in Kitsap County). Thus, the first element is met.

2. *Cause of Action*

When parties to two successive proceedings are the same, "a matter may not be relitigated, or even litigated for the first time, if it could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding." *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 329, 941 P.2d 1108 (1997). There is no all-inclusive test for determining whether a matter should have been litigated earlier. *Kelly-Hansen*, 87 Wn. App. at 329. Instead, we consider a variety of factors, including whether the two proceedings arise out of the same facts, involve substantially the same evidence, and whether rights or interests

established in the first proceeding would be destroyed or impaired by the second proceeding. *Id*. at 329. A matter should have been raised and decided earlier if it is merely an alternate theory of recovery or an alternate remedy. *Id*. at 331.

   a. *Same Facts and Evidence*

The McGreals' 2015 complaint alleged causes of action for failure to follow statutory foreclosure process, failure of trustee to act in good faith, and violations of the Consumer Protection Act. The 2019 complaint alleged the same claims as the 2015 complaint, but added two causes of action not in the prior lawsuit: failure to use judicial foreclosure on identified agricultural property, and theft of second lot. Both suits are based on the same allegedly illegal foreclosure sale; the second suit merely raises additional theories.

These causes of action were all necessarily based on the documents used in securing the loans on the property and in effecting the nonjudicial foreclosure, as well as the actions taken by Peak, Shellpoint, and others to execute the sale. Thus, the two lawsuits are based on the same evidence.

Although the 2019 complaint alleged new facts about a conspiracy between Peak and Harris and using the property primarily for agriculture, the McGreals do not argue, and there is no evidence to suggest, that these newly alleged facts were unknown to them or beyond ascertaining in the "exercise of reasonable diligence" when they sued in 2015 or amended their complaint in 2016. *Kelly-Hansen*, 87 Wn. App. at 329. In fact, the record supports the opposite conclusion: these facts are based on evidence either known to the McGreals or easily ascertainable by them during the prior proceedings.

b. *Infringement of Same Right*

The third factor, infringement of same right, is met here because the 2019 action is predicated on the validity of the foreclosure sale, which involves the same property rights and statutory rights under the Washington State "Deeds of Trust Act," chapter 61.24 RCW, which were resolved against the McGreals in the first lawsuit. And both lawsuits contain claims under the Consumer Protection Act, which allege infringement of the same statutory rights therein.

3. *Persons or Parties, and Identity in Quality of Persons or Parties*

The 2015 lawsuit named Peak and Shellpoint as parties. And for purposes of res judicata, persons or parties in privity in successive actions are considered identical. *See Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 764, 887 P.2d 898 (1995). Privity is strictly construed "to mean parties claiming under the same title. It denotes a mutual or successive relationship to the same right or property. *Loveridge*, 125 Wn.2d at 764 (quoting *Owens v Kuro*, 56 Wn.2d 564, 568, 354 P.2d 696 (1960)). "The binding effect of the adjudication flows from the fact that when the successor acquires an interest in the right it is then affected by the adjudication in the hands of the former owner." *Owens* 56 Wn.2d at 568. Thus, under res judicata principles, Harris is an identical person to Peak and Shellpoint.

Harris, Peak, and Shellpoint have shown that the 2019 lawsuit involves the same subject matter, cause of action, and persons as the 2015 lawsuit. Moreover, any new claims raised in the 2019 lawsuit should, in the exercise of reasonable diligence, have been raised in the earlier case because they involve substantially the same facts and evidence, and because important rights established by the first lawsuit would be impaired by the second. Consequently, res judicata applies to bar all of the McGreals' claims.

11

No. 53533-5-II

CONCLUSION

We hold that, the trial court did not err in granting summary judgment in favor of Harris and it did not err in granting a CR 12(b)(6) motion to dismiss in favor of Peak and Shellpoint. The doctrine of res judicata precludes the McGreals from relitigating the same claims and those that could have been raised, and in the exercise of reasonable diligence should have been raised, in 2015 in the instant case. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, C.J.

_____
Veljacic, J.

12