IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LAURA M. PLISKA and ROBERT J. PLISKA, in their capacity as Co-Personal Representatives of the ESTATE OF ALLEN F. PLISKA, Deceased,<br><br>               Respondents,<br><br>      v.<br><br>KENNETH ALLEN PLISKA and SUZANNE PLISKA,<br><br>               Appellants. | No. 88145-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — This appeal arises from the probate of the estate of Allen Frank Pliska. The decedent's son, Kenneth Pliska, appeals a court order determining he was liable for rent of a home previously owned by his father, which he occupied during litigation about his father's estate. The dispute eventually concluded that the property was controlled by the estate of Allen Frank Pliska (the Estate). Kenneth contends that the petition underlying this appeal is prevented by claim preclusion. He also argues that the trial court erred when it awarded rental damages based on the entire value of the property instead of being offset by his portion as a recognized beneficiary under the will and that there was not substantial evidence that he occupied the property from May to October 2023. Finally, both parties request attorney fees on appeal. We affirm the trial court's decision and award fees to the Estate.

FACTS

Allen[1] had three children, Zeena, Kenneth, and Michael. Allen owned real property in Camas, Washington, as well as multiple properties in Oregon.

In 2016, Allen's son Kenneth Pliska and Kenneth's wife, Suzanne[2] moved into a house that Allen owned in Camas, Washington, and became Allen's caretakers. Allen had executed a will in 2016 (2016 Will). In 2019, Kenneth prepared and Allen executed a will (2019 Will) and multiple Transfer-on-Death-Deeds (TODDs) relating to all the real property.

Allen died on September 4, 2019. Allen's two surviving siblings, Laura Pliska and Robert Pliska, were appointed co-personal representatives (PRs) for the Estate of Allen F. Pliska. As PRs, Laura and Robert filed separate actions in Washington and Oregon to enforce the decedent's 2016 Will and set aside the TODDs relating to real property in each state, respectively, arguing Allen lacked capacity and was subjected to undue influence. The petition in Clark County Superior Court related to the Camas property and was made pursuant to the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW.

The parties agreed to try all issues raised in the two suits in the Oregon action in Multnomah County Circuit Court (Oregon Court). After a trial, the Oregon Court held that because Allen lacked capacity, the 2019 Will was void. Further, it held that both the 2019 Will and TODDs were void because they were the result of undue influence. The Oregon Court set aside and nullified five TODDs relating to the four locations in Oregon

---

[1] As there are several family members who share the last name Pliska, for clarity we refer to them by their first names.

[2] For simplicity, we refer to the married couple as Kenneth, collectively.

and the location in Camas, Washington. Under the terms of the 2016 Will, each of the decedent's three children was entitled to a 1/3 share of the decedent's estate. The Oregon Court entered judgment on the Estate's claims on May 24, 2023.

After the Oregon suit resolved, on August 21, 2023, Laura and Robert filed a second TEDRA petition in Clark County Superior Court seeking, among other things, to "surcharg[e] Kenneth Pliska for the reasonable fair market value of the Camas house from October, 2019 through to date . . . with payment authorized to be taken out of his share of inheritance, if necessary." Laura declared that "Kenneth and Suzanne have had the keys to and complete control over the decedent's Camas house . . . since approximately May of 2017 through June, 2023." The PRs amended their petition on December 11, 2023, and Kenneth filed a response, arguing that the petition was barred by res judicata, i.e. claim preclusion, and improper claim splitting.

Subsequently, on January 5, 2024, "[p]ursuant to" the Oregon Court's decision, the Clark County Superior Court issued a final judgment on the Estate's first TEDRA petition authorizing the PRs to sell the Camas property. On January 29, 2025, the PRs withdrew all claims in their second TEDRA action, except the request to surcharge Kenneth Pliska for rent from October 1, 2019, to October 23, 2023.

On Kenneth's defense of claim preclusion, the court agreed with the PRs that "the prior action in [Oregon] and the earlier TEDRA Petition in Washington involved the same parties and included a final judgment, [but] the court does not agree that the prior actions involved the same subject matter or causes of action." Indeed, the court specified that neither action "addressed the rental value of the Camas property." It reasoned that

3

> the initial TEDRA petitions were filed to set aside the [TODDs] and invalidate the 2019 will, thus allowing the 2016 will to be probated. The claim for rental surcharge was predicated on the successful litigation of the initial TEDRA. In short, the claim for rent was not known until the court declared the [TODDs] and the 2019 will null and void.

The court then concluded that based on testimony presented at an evidentiary hearing on January 29, 2025, Kenneth "shall reimburse the Estate for the reasonable fair market rental value of the Camas house from October 1, 2019, through October 31, 2023, in the amount of $177,000. This shall come from his 1/3 portion of the Estate." Kenneth filed a motion for reconsideration, which the court denied. Kenneth timely appeals.

## DISCUSSION

Kenneth contends that the TEDRA petition at issue in this appeal is barred by claim preclusion. He also argues that the trial court erred when it awarded the Estate rent based on the entire value of the Camas property instead of offsetting it by his one-third share. Finally, he claims that there was not substantial evidence to support the conclusion that he occupied the home between May 2023 and October 2023.

I. Claim Preclusion

Kenneth contends that the trial court erred by entering judgment on the Estate's claim for rent and denying the motion for reconsideration because the action "was barred by the doctrine of res judicata, specifically [respondents] [] improperly split their claim for the Camas Property barring the second judgment for rental value." In particular, Kenneth contends that it was error for the court to find "that the claim for rent was not 'known until the court declared the transfer on death deeds and the 2019 will null and void.' "

4

Whether the doctrine of claim preclusion,[3] also known as res judicata, applies is "an issue of law, subject to de novo review on appeal." Berschauer Phillips Const. Co. v. Mut. of Enumclaw Ins. Co., 175 Wn. App. 222, 227, 308 P.3d 681 (2013). Claim preclusion "bars litigation of claims that were brought or might have been brought in a prior proceeding." Weaver v. City of Everett, 194 Wn.2d 464, 473, 450 P.3d 177 (2019) (emphasis omitted). "A party seeking to apply [claim preclusion] must establish four elements as between a prior action and a subsequent challenged action: 'concurrence of identity . . . (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against whom the claim is made.' " Id. at 480 (quoting N. Pac. Ry. Co. v. Snohomish County, 101 Wn. 686, 688, 172 P. 878 (1918)). All four elements must be satisfied to establish claim preclusion. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 866, 93 P.3d 108 (2004). "The party asserting the defense of [claim preclusion] bears the burden of proof." Id. at 865 (footnote omitted).

Determining whether a matter should have been litigated requires consideration of several factors, including "whether the present and prior proceedings arise out of the same facts, whether they involve substantially the same evidence, and whether rights or interests established in the first proceeding would be destroyed or impaired by completing the second proceeding." Kelly-Hansen v. Kelly-Hansen, 87 Wn. App. 320, 330, 941 P.2d 1108 (1997). These factors "are analytical tools; it is not necessary that all four factors be present to bar the claim." Ensley v. Pitcher, 152 Wn. App. 891, 903,

---

[3] As the U.S. Supreme Court has noted, the terms "claim preclusion" and "issue preclusion" "have replaced a more confusing lexicon. Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.' " Taylor v. Sturgell, 553 U.S. 880, 892 n.5 (2008) (citing Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 77, n.1 (1984)).

222 P.3d 99 (2009). Courts have determined that a matter should have been raised for the purposes of claim preclusion if it is "merely an alternate theory of recovery, or an alternate remedy." Kelly-Hansen, 87 Wn. App. at 331. Claim preclusion does not apply if a necessary fact was not in existence at the time of the first proceeding, or if there were valid reasons for not asserting the claim earlier. Id.

The parties primarily focus on concurrence of identity in the "subject-matter" and "cause of action." Kenneth analogizes to Kelly-Hansen, in which Division Two of this court addressed the impact of two predivorce separation agreements that were not addressed in a later divorce decree. 87 Wn. App. at 322. The agreements, an oral agreement from 1988 and a written agreement from 1989, concerned amounts the spouses owed each other and repayment plans. Id. at 323-24. Later litigation arose when one spouse disputed the amounts owed, and one spouse relied on the 1988 agreement while the other relied on the 1989 agreement. Id. at 326. Each argued the other's position was barred by claim preclusion. Id. at 326-27. The court held that each agreement "merged" or was precluded by the divorce decree, reasoning that "each agreement allegedly dealt with the division of the parties' property, and that was the very subject before the court," and there was no reason either spouse could not have brought the agreements to the attention of the court. Id. at 334. Furthermore, the court reasoned that if either agreement was enforced at the time the dispute at issue arose, it would impair, "if not destroy," the property distribution within the divorce decree. Id.

Here, Kelly-Hansen is distinguishable. First, unlike the shared subject matter in the dissolution and the subsequent litigation in Kelly-Hansen, there is a difference of subject matter between the initial proceedings in Oregon and Washington, where the

issues were the validity of the 2019 Will and multiple TODDs, and the later TEDRA petition, in which the PRs ultimately pursued only one claim for rent from October 1, 2019, to October 23, 2023. Furthermore, while the present and prior proceedings generally concern the ownership of the Camas home, the claims do not involve the same set of facts or the same evidence. Indeed, the court in the second TEDRA action conducted an evidentiary hearing solely to determine whether Kenneth had complete control of the property following the decedent's death up until either May or October 2023.

Further, whereas in Kelly-Hansen, enforcement of the earlier agreements would impair the property distribution within the divorce decree, here, the claim for rent in the current proceeding does not violate any rights secured within the first proceeding. We agree with the PRs that "[t]he TEDRA action does not destroy or impair rights or interests established in the [Oregon] litigation or in the parallel proceeding in Clark County; in fact, it depends upon them." The claim for rent is not an "alternate theory" or remedy that could have otherwise been brought in the prior proceeding. Instead, this cause of action came into existence only after the court in the prior action nullified and voided the TODD relating to the Camas property and recognized the Estate as the owner of the property pursuant to the 2016 Will. Accordingly, claim preclusion does not prevent Laura and Robert from bringing their claim for rent in the second TEDRA petition.

II. Calculation of Rental Value Damages

Kenneth argues that the court "erred in awarding [the Estate] rental value damages based on the entire value of the Camas Property, rather than 2/3 of the rental value as Pliska remained a 1/3 owner of the Camas Property" because the "heirs are co-tenants in the property." We disagree.

At the evidentiary hearing, the parties agreed that it was undisputed that Kenneth is a recognized beneficiary under the 2016 Will. In closing, Kenneth argued that because the three beneficiaries were all "essentially co-tenants," the court should take that into consideration concerning the rent owed. The trial court found the reasonable fair market value of the Camas property to be $177,000 without any deduction for Kenneth's one-third share.

RCW 11.04.250 controls the heirs' rights to real property. First, after a person dies, "title shall vest immediately in his or her heirs or devisees, subject to his or her debts, family allowance, expenses of administration, and any other charges for which such real estate is liable under existing laws . . . : PROVIDED, That no person shall be deemed a devisee until the will has been probated." Id. See also In re Estate of Jones, 152 Wn.2d 1, 12, 93 P.3d 147 (2004) ("Under RCW 11.04.250, the title to land vests to devisees at the time of the devisor's death."). Further,

> any one or more of such heirs or devisees, or their grantees, jointly or severally, may sue for and recover their respective shares or interests in any such lands, tenements, or hereditaments and the rents, issues, and profits thereof, whether letters testamentary or of administration be granted or not, *from any person except the personal representative* and those lawfully claiming under such personal representative.

RCW 11.04.250 (emphasis added).

In Jones, similar to the situation here, a beneficiary lived in a piece of property that was part of the estate. 152 Wn.2d at 12. The decedent's will transferred her estate in equal shares to her four sons, appointing one of the sons as the personal representative with nonintervention powers. Id. at 6-7. About one year after his mother's death, the son in his capacity as the personal representative deeded himself a piece of estate property in which he was living. Id. at 12. Our Supreme Court held that the son breached his fiduciary duties by "failing to use the fair market value of the house and offset his distribution by the amount in excess of his one-fourth share." Id. at 13. Because an heir may not treat estate property as their own until the estate is closed, the son had only the rights of an executor as it related to the property. Id. at 14. And "[w]here a person's only right to possession of the property arises from his status as executor, he does not have a right to remain on and use the property when there are other reasonable alternatives open." Id. Thus, because he chose to use the property for his own benefit, he had to pay rent. Id. In the court's conclusion, it did recognize that after a final accounting, "the amount [the son] owes to the estate may be offset by [his] one-fourth distributive share." Id. at 22. Thus, the Jones court recognized that even an heir who has the privileges associated with being an executor must pay rent if they use property for personal benefit before the estate is closed.

Here, the 2016 Will gave the heirs, Kenneth, Zeena, and Michael, equal interest shares in the overall estate. The final judgment entered on January 5, 2024, in the PRs' first TEDRA action specified that the title of the Camas property "is to be transferred to the co-personal representatives/petitioners to be administered under" the 2016 Will.

9

Like the beneficiary in Jones, despite title vesting at the time of the decedent's death, Kenneth could not treat the estate as his own property until the estate was closed. Thus, the court properly determined that Kenneth was liable for rent.

Kenneth contends that the amount he owes to the Estate should be offset by his one-third distributive share given that he is a recognized beneficiary. But pursuant to RCW 11.04.250, the heirs' equal one-third interests in the Camas property are "subject to [the decedent's] debts, family allowance, expenses of administration, and any other charges for which such real estate is liable under existing laws." Thus, as in Jones, the time for such an offset is not upon vesting, i.e. upon the decedent's death. Rather, *after* an accounting, the court could offset the amount of rent owed by his one-third share. See Jones, 152 Wn.2d at 22. The court did not err by assessing rent against Kenneth.

III. Award of Lost Rental Value

Next, Kenneth contends that "the Trial Court erred in awarding lost rental value [between May 2023 and October 2023] . . . because there was insufficient evidence of ouster after entry of the Judgment in [Oregon in May 2023] and the findings of the trial court do not support a conclusion of a continued ouster." Specifically, he argues that there was "no evidence that [the Estate] [was] prohibited" from accessing the Camas property after May 31, 2023, and assigns error to the court's finding that he had sole access and control over the Camas property until October 2023.

After an evidentiary hearing, the court made the contested finding:

Kenneth Pliska had sole access and control over [the Camas property], between Allen Pliska's date of death and October 2023, when Kenneth finally removed his personal property from the residence . . .

The court does not believe the Co-Personal Representative or other heirs of Allen Pliska had the code to the Camas property as asserted by

Kenneth. Even if they did, he was asserting ownership until [the Oregon Court] found otherwise.

"Findings of fact are reviewed under a substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). "If the standard is satisfied, a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently." Id. at 879-80. "Questions of law and conclusions of law are reviewed de novo." Id. at 880.

The Oregon Court entered its order on May 24, 2023. At the hearing, Laura testified that after the judgment was entered in May 2023, she had difficulty entering the Camas property because she "didn't want to go in there" and "be accused of [] taking something that was [Kenneth and Suzanne's]." She also testified that she received keys to the house in October 2023. Michael testified that they received keys to the home on June 7, 2023, but also that Kenneth and Suzanne did not remove their possessions "until . . . October when they finally got the last things out." Michael further testified,

> [T]here was . . . [a] Corvette . . . there and that was an issue as the realtor did not want to list it while there were still things all over in the house and [they] had to really scramble trying to get that cleared out so [the Estate] could get it listed.

Kenneth testified that after May 2023, he and Suzanne were out of the house following the Oregon judgment. He also believed that Laura had access to the Camas property through a keypad on the garage via a code he shared with her. He also acknowledged he "left a lot of stuff in [the] house," but that it only took a "month or so" to remove after judgment. Laura, Michael, and Kenneth agree that the PRs were able to visit the property in June 2023.

This testimony at the evidentiary hearing provided at least a "quantum of evidence" sufficient to persuade a rational, fair-minded person that Kenneth maintained sole access and control over the Camas property through October 2023. Kenneth focuses on the "un-refuted testimony of Michael [] that he and PR Laura [] accessed the Property themselves in June 2023 and that the key to the Premises was delivered to them by June 7, 2023," but that testimony was not undisputed insofar as it relates to when Laura and others received a key to access the home. Indeed, Laura testified to receiving the key in October 2023 and there was also disputed testimony as to when Kenneth removed his items from the home so the Estate could finally list the home and sell it.

Accordingly, we reject Kenneth's challenge to the trial court's finding that Kenneth maintained sole and exclusive access over the property through October 2023. The record provides substantial evidence to support this finding.

IV. <u>Attorney Fees</u>

Kenneth contends that the award of attorney fees and costs to the Estate for prevailing in the action below should be reversed if this court also determines the underlying judgment must be reversed as well. Because we affirm the trial court, we decline to reverse the award of attorney fees and costs in the trial below.

Next, both Kenneth and the PRs contend that they are entitled to attorney fees on appeal under RCW 11.96A.150. Under RCW 11.96A.150, "any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party." RCW 11.96A.150(1). We "may consider any and all factors" that we deem to be relevant and appropriate. <u>Id.</u> Because the PRs prevail on appeal, we award

attorney fees to the Estate in an amount to be determined by a commissioner of this court.

CONCLUSION

We affirm.

_Chung, J._

WE CONCUR:

_Birk, J._